UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Omnicell, Inc., and Pandora Data Systems, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Medacist Solutions Group, LLC, <br><br> Defendant. | Case No.: 10-CV-04746-LHK <br><br> ORDER GRANTING MOTION TO DISMISS |

Defendant Medacist Solutions Group, LLC moves to dismiss, or, in the alternative, to transfer this case to the District of Connecticut, pursuant to Federal Rule 12(b)(3) and 28 U.S.C. § 1406(a). Plaintiffs Omnicell, Inc., and Pandora Data Systems, Inc., contend that venue in this District is proper and oppose the motion. The Court heard oral argument on February 3, 2011. Having considered the arguments and submissions of the parties, the Court grants Defendant's motion to dismiss, without prejudice to Plaintiffs refiling in the appropriate forum.

**I. Background**

On May 2, 2007, Medacist Solutions Group, LLC ("Medacist") filed a Complaint against Pandora Data Systems, Inc. ("Pandora") in the District of Connecticut alleging infringement of U.S. Patent No. 6,842,736 (the "'736 Patent"). *See* Compl., *Medacist Solutions Group, LLC v. Pandora Data Systems, Inc.*, No. 3:07-cv-692-JCH (D. Conn. May 2, 2007). The parties refer to this action as the Pandora Litigation. On October 20, 2008, Medacist and Pandora entered into a

1

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

settlement and license agreement (the "Pandora License") that resolved the Pandora Litigation and granted Pandora certain rights associated with the '736 Patent. Under its terms, the settlement agreement is to be construed, governed, interpreted, and applied in accordance with Connecticut law. Of particular importance to this motion, the settlement agreement provides as follows:

> Concurrently with the execution of this Agreement, Medacist and Pandora shall execute and file a Stipulated Request for Dismissal of the Action with prejudice pursuant to F.R.C.P. Rule 41(a). This Dismissal shall provide that each party shall bear its own costs and that the Court will retain jurisdiction to enforce the Agreement.

Decl. of Kenneth S. Chang in Supp. of Omnicell, Inc.'s Response to Medacist Solutions Group, LLC's Mot. to Dismiss or for Change of Venue ("Chang Decl."), Ex. B § 6.1.

In accordance with this provision, Medacist and Pandora filed a Stipulation of Dismissal, which the District of Connecticut signed and entered on October 29, 2008. Decl. of Elizabth M. Smith in Supp. of Def. Medacist Solutions Group, LLC's Mot. to Dismiss or for Change of Venue ("Smith Decl."), Ex. A. The Stipulation of Dismissal entered by the District of Connecticut provides in pertinent part:

> The Court shall retain jurisdiction, pursuant to *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 144 S. Ct. 1673 (1994) and the inherent authority of the Court to enforce its orders, over Medacist and Pandora and the subject matter of this action and the Settlement Agreement for purposes of construing and enforcing the Settlement Agreement, including remedies for violation of said matters, and each party expressly reserves its rights to pursue the other party for violation of said matters.

Smith Decl. Ex. A. ¶3. Upon entry of the Stipulation of Dismissal, the Pandora Litigation was closed, and the action remains closed to this day.

Meanwhile, on July 7, 2009, Medacist filed a separate Complaint against Omnicell in the Southern District of New York (the "Omnicell Litigation"), also alleging infringement of the '736 Patent. Compl. ¶ 15. The Omnicell Litigation is currently pending. Compl. ¶ 16. Pandora is not a party to that case.

Beginning sometime around October 2009, Medacist began to raise concerns that Pandora was in breach of certain royalty obligations under the settlement and license agreement. Medacist and Pandora engaged in some communications regarding the alleged breach, and there is a dispute as to whether these communications and Pandora's payment of certain disputed royalties resolved

1  the issue. It appears that the parties had no further contact regarding the issue between March 2010
2  and October 2010.
3        On September 29, 2010, Omnicell and Pandora reached a confidential agreement regarding
4  the terms of an acquisition of Pandora by Omnicell (the "Pandora Acquisition"). Compl. ¶ 17. On
5  October 5, 2010, the acquisition was announced to the public, and the acquisition was completed
6  through the sale of 100 percent of outstanding Pandora stock to Omnicell. Compl. ¶¶ 17-18. In
7  light of this acquisition, Omnicell contends that, as 100 percent owner of voting stock in Pandora,
8  it is now entitled to the benefit of the Pandora License. Compl. ¶ 19. On October 12, 2010,
9  however, Medacist sent letters to counsel for Pandora and Omnicell alleging that the Pandora
10 Acquisition constituted a breach of the Pandora License and that any assignment of the Pandora
11 License to Omnicell would exceed the scope of the license agreement and would be challenged by
12 Medacist. Compl. ¶¶ 20, 22. The letter sent to Pandora's counsel demanded a meeting within 8
13 days and stated that if Medacist did not receive a response by October 15, 2010, it would pursue
14 the rights and remedies available to it at law and under the Pandora License. Compl. ¶ 21.
15       On October 20, 2010, in response to the apparent threat of litigation by Medacist, Plaintiffs
16 Pandora and Omnicell filed a Complaint for Declaratory Judgment in the Northern District of
17 California. Plaintiffs seek a declaration that they have not substantially or materially breached the
18 Pandora License, that Omnicell is entitled to the benefit of the License, and that any assignment of
19 the License to Omnicell is valid and permissible under the terms of the License. Compl. ¶ 30.
20 Plaintiffs also bring a claim against Medacist for breach of the duty of good faith and fair dealing.
21 Compl. ¶¶ 32-39.
22       On November 12, 2010, Medacist filed a Motion to Open Judgment, to Enforce Settlement
23 Agreement and License, and for Temporary and Permanent Restraints in the closed Pandora
24 Litigation in the District of Connecticut. The District of Connecticut has not yet ruled on this
25 motion, and the case currently remains closed. Medacist contends that because the District of
26 Connecticut expressly retained jurisdiction over the original Pandora Litigation for purposes of
27 construing and enforcing the settlement agreement, reopening the Pandora Litigation is the only
28 proper means of resolving disputes regarding enforcement and interpretation of the settlement

agreement and license.  On this theory, Medacist now moves to dismiss this action, or, in the alternative, to transfer it to the District of Connecticut, on grounds of improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).

**II. Discussion**

    **A.  Legal standard**

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue.  Generally, courts look to the venue provisions of 28 U.S.C. § 1391 to determine whether venue is proper.  However, even if venue would otherwise be proper under 28 U.S.C. § 1391, a defendant may move to dismiss under Rule 12(b)(3) on the basis of a forum selection clause.  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  When considering a motion to dismiss pursuant to Rule 12(b)(3), a court need not accept the pleadings as true and may consider facts outside of the pleadings.  *Id.*  Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought.[1]  Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court.  *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

    **B.  Propriety of Venue in This Court**

This motion presents the narrow question of whether the District of Connecticut's retention of jurisdiction over the Pandora Litigation renders venue in the Northern District of California improper.[2]  Medacist argues that in the express provisions of the settlement agreement and

---

[1] 28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

[2] Medacist does not appear to argue that venue would otherwise be improper under 28 U.S.C. § 1391(a); its motion relies solely on the argument that retention of jurisdiction by the District of Connecticut operates as an exclusive forum selection clause barring venue in any other court.  In a footnote to its motion, Medacist states that it believes this Court lacks jurisdiction over it and purports to reserve the right to raise this issue in a subsequent motion.  Medacist has not briefed the

4
Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

1  Stipulation of Dismissal, the parties consented to the exclusive venue and jurisdiction of the
2  District of Connecticut. While Plaintiffs acknowledge that there is language in these documents
3  consenting to the jurisdiction of the District of Connecticut, they contend that any forum selection
4  provisions are merely permissive and do not establish *exclusive* venue in the District of
5  Connecticut or any other court.

6  If the language at issue were contained in a private contractual agreement, entered into
7  independently of any court order, this case would be relatively straightforward. Ninth Circuit case
8  law distinguishes between "permissive" forum selection clauses, which establish venue or
9  jurisdiction in a specified court but still permit venue elsewhere, and "mandatory" forum selection
10 clauses, which require actions to be brought only in the specified court. *See, e.g.*, *Docksider, Ltd.*
11 *v. Sea Technology, Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989); *Hunt Wesson Foods, Inc. v. Supreme*
12 *Oil Co.*, 817 F.2d 75, 77-78 (9th Cir. 1987). For a clause to be mandatory and thus restrict venue
13 to the court specified in the agreement, the clause "must contain language that clearly designates a
14 forum as the exclusive one." *Northern California Dist. Council of Laborers v. Pittsburg-Des*
15 *Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995). Generally, when a clause only specifies
16 jurisdiction in a particular court, the clause will not be enforced to bar venue elsewhere "without
17 some further language indicating the parties' intent to make jurisdiction exclusive." *Docksider*,
18 875 F.2d at 764. Thus, where a contract states only that a particular court shall have jurisdiction
19 over an action or that the agreement shall be enforceable in a particular court, the Ninth Circuit has
20 found the forum selection clause to be permissive. *See Hunt Wesson*, 817 F.2d at 76-77 (clause
21 stating "courts of California, County of Orange, shall have jurisdiction over the parties in any
22 action at law relating to the subject matter or the interpretation of this contract" is permissive);
23 *Northern California Dist. Council of Laborers*, 69 F.3d at 1036-37 (clause stating that a decision
24 "shall be enforceable by a petition to confirm an arbitration award filed in the Superior Court of the

---

26 issue of personal jurisdiction in this motion, and accordingly the Court will not address it.
   Additionally, the Court notes that Medacist has not argued that if the Court finds venue proper, the
27 case should nonetheless be transferred for the convenience of parties and witnesses pursuant to 28
   U.S.C. § 1404(a). The Court thus limits its analysis to the question of whether dismissal or transfer
28 is required under Rule 12(b)(3) and 28 U.S.C. § 1406(a) based on the District of Connecticut's
   retention of jurisdiction.

5

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

City and County of San Francisco" is permissive).  In this case, neither the settlement agreement nor the Stipulation of Dismissal mentions venue or contains any language suggesting that the parties intended to make jurisdiction in the District of Connecticut exclusive.  Both documents state only that the District of Connecticut "shall" have jurisdiction to enforce or construe the settlement agreement.  *See* Chang Decl. Ex. B § 6.1; Smith Decl. Ex. A. ¶3.  This language is no different from that held to be permissive in *Hunt Wesson* and *Northern California Dist. Council of Laborers*.  Under Ninth Circuit law, therefore, this language ordinarily would not be sufficient to mandate dismissal or transfer for improper venue.

Medacist argues, however, that the rule set forth in *Hunt Wesson* does not apply in cases where a district court retains jurisdiction over an action and settlement agreement pursuant to a court order.  Relying on the Ninth Circuit's decision in *Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998), Medacist contends that when a court expressly retains jurisdiction to enforce a settlement agreement, the retention of jurisdiction operates as an exclusive forum selection clause requiring disputes under the settlement agreement to be brought in that court.  In *Flanagan*, the original action at issue had been initiated in the Northern District of California and resulted in a complex settlement agreement subject to court approval.  143 F.3d at 542.  The settlement agreement contained prospective terms and was likely to require future court supervision.  *Id.*  The parties therefore provided for judicial resolution of future disputes by stipulating that the Northern District of California should retain jurisdiction.  *Id.* at 543.  The district judge ultimately approved the settlement and signed a Stipulated Order that included the following provision:

> The Court shall retain jurisdiction of this action for purposes of resolving any disputes that may arise in the future regarding the settlement agreement, its terms or the enforcement thereof.

*Id.*  A little less than a year later, the Flanagans (the plaintiffs in the Northern District of California case) sued several of the defendants in state court for breach of the settlement agreement.  *Id.*  Having determined that all of the issues raised in the state lawsuit fell within the district court's retention of jurisdiction, the state court stayed its case, and the federal court subsequently allowed the Flanagans to file a supplemental complaint alleging their breach of contract claims.  *Id.*  After the federal court dismissed most of their claims, the Flanagans attempted to lift the stay in the state

6

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

1    court case. *Id.* At that point, the federal court issued a permanent injunction enjoining the

2    Flanagans from pursuing the dispute in state court. *Id.*

3    On appeal, the Flanagans argued, among other things, that the district court's reservation of

4    jurisdiction was concurrent with state court jurisdiction and not exclusive of it. *Id.* at 544. In

5    support of this argument, they cited cases involving forum selection clauses in private contracts,

6    including *Hunt Wesson*. *Id.* at 545. Based on these cases, they argued that if language of

7    exclusivity is not used, then designation of one forum leaves concurrent jurisdiction in others. *Id.*

8    The Ninth Circuit rejected this argument, finding that the *Hunt Wesson* line of cases had "little

9    relevance." *Id.* Instead, the Court held that in the context of retention of jurisdiction, "a provision

10   for future enforcement of a settlement order[] implies that the retention was meant to be exclusive."

11   *Id.* In so holding, the Court relied, in part, on decisions by the Second and Eleventh Circuit which

12   held that similar language established exclusive jurisdiction in the federal district court and barred

13   state court enforcement actions. *See United States v. American Soc'y of Composers* (*In re*

14   *Karmen*), 32 F.3d 727, 731-32 (2d Cir. 1994) (district court retained exclusive jurisdiction to

15   enforce consent decree and consent judgment); *United States v. American Soc'y of Composers*, 442

16   F.2d 601, 603 (2d Cir. 1971) (affirming issuance of injunction prohibiting state court action to

17   enforce consent decree over which federal court retained jurisdiction); *Battle v. Liberty Nat'l Life*

18   *Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989) (same). The Ninth Circuit reasoned that "it would

19   make no sense for the district court to retain jurisdiction to interpret and apply its own judgment . .

20   . yet have a state court construing what the federal court meant in the judgment," for such an

21   arrangement would frustrate the district court's purpose.[3] *Flanagan*, 143 F.3d at 545. The court

22   also worried that holding otherwise would impose an "uncomfortable burden" upon the state judge

23   to determine what the federal judge meant in its judgment. *Id.* However, the Ninth Circuit did not

24   exclude the possibility that "in some circumstances, the words, context, or subsequent order of the

---

[3] Perhaps reflecting its view that non-exclusive retention of jurisdiction would be nonsensical, the Ninth Circuit also held in an interlocutory order that the Flanagans were not entitled to equitable tolling from the time they filed their claims in state court because filing in the state court "was unreasonable in light of the federal district court's explicit retention of jurisdiction." *Flanagan*, 143 F.3d at 543 (quoting *Flanagan v. Federal Sav. and Loan Ins. Corp.*, No. 94-16965, at 13 (9th Cir. Apr. 4, 1996)).

7

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

federal court might show that retention of jurisdiction was not intended to be exclusive." *Id.* at 545.

Neither party has cited decisions that apply *Flanagan* to facts analogous to those presented here, or that consider what "words" or "context" might support a finding that retention of jurisdiction was not intended to be exclusive. Nor has the Court found cases that are particularly on point. In *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007 (9th Cir. 1999), the Ninth Circuit relied on *Flanagan* in finding that the district court had implicitly retained exclusive jurisdiction over two consent decrees relating to water rights in Nevada. *Alpine Land* is an unusual case, however, in that the Ninth Circuit had previously approved a jurisdictional arrangement in which applications for changes in water use would be brought first to the State Engineer and then would be heard on appeal by the federal district court. *Id.* at 1011. Thus, while the Ninth Circuit noted that *Flanagan* left open the possibility of non-exclusive retention of jurisdiction, it found that because the consent decrees at issue were "complex and comprehensive water adjudications for which conflicting federal and state constructions would be entirely unworkable," the retention of jurisdiction was intended to be exclusive. *Id.* at 1013. The Court has not found other cases within the Ninth Circuit that involve a 12(b)(3) motion based solely on retention of jurisdiction by another federal court. Outside the Ninth Circuit, the few cases the Court has identified appear either to treat jurisdictional retention provisions identically to private forum selection clauses or to treat both types of provisions as a factor appropriately considered under a discretionary § 1404(a) transfer analysis. *See Kane v. Manufacturers Life Ins. Co.*, No. 08-4581, 2009 WL 78143, at *2 (D. N.J. Jan. 9, 2009) ("a jurisdictional retention provision in a stipulated settlement falls under the same analytical rubric as does a contractual forum selection clause"); *Interactive Music Technology, LLC v. Roland Corp. U.S.*, No. 6:07-CV-282, 2008 WL 245142, at *9 (E.D. Tex. Jan. 29, 2008) (treating retention of jurisdiction as just one factor to be considered in § 1404(a) transfer analysis).

Plaintiffs argue that *Flanagan* has no application to this case because *Flanagan* was concerned with the reservation of federal subject matter jurisdiction to the exclusion of state jurisdiction, rather than retention of exclusive venue in a single federal court. Plaintiffs point out, correctly, that the jurisdiction retention provisions at issue in *Flanagan* and in this case are

8

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

premised on the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994). *Kokkonen* recognized that when a federal court dismisses an action pursuant to the parties' stipulation and settlement, a later action to enforce the settlement will ordinarily involve state law breach of contract claims that cannot be brought in federal court (absent diversity or some other independent basis of jurisdiction). *Id.* at 381. Under *Kokkonen*, however, a federal district court may provide a jurisdictional basis for such claims, with the parties' consent, by including a provision retaining jurisdiction over the settlement agreement in a court order. *Id.* at 381-82. Plaintiffs argue that a typical jurisdiction retention provision does no more than what *Kokkonen* authorizes: that is, it ensures that subject matter jurisdiction to enforce the settlement agreement exists in at least one federal forum, without barring jurisdiction in other federal courts based on some other source of jurisdiction, such as diversity jurisdiction.

While this is not an implausible argument, it would seem to be foreclosed by the Ninth Circuit's statement in *Flanagan* that retention of jurisdiction pursuant to *Kokkonen* is ordinarily meant to be exclusive. *Flanagan*, 143 F.3d at 544-45. Plaintiffs attempt to avoid this problem by pointing out that *Flanagan* concerned a dispute over whether a *state* court had jurisdiction to enforce a settlement agreement entered into in federal court. They thus appear to read *Flanagan* to hold that when a federal court retains jurisdiction over a settlement agreement, it retains exclusive federal subject matter jurisdiction that divests state courts of jurisdiction over what would otherwise be state law claims, but would permit settlement disputes to be litigated on the federal level in any district court in which the parties could establish jurisdiction. In other words, retention of jurisdiction would operate to furnish federal subject matter jurisdiction and preclude state court jurisdiction, but not bar jurisdiction in another federal court. While *Flanagan* did articulate concerns of state-federal comity, the Court does not agree that its decision rested on the relationship between state and federal subject matter jurisdiction. Rather, the Court reads *Flanagan* to draw a basic distinction between "a court order [which] exercises judicial authority" and "a forum selection clause in a private contract [which] does not." *Flanagan*, 143 F.3d at 545. The decision reflects the Ninth Circuit's judgment that a court-ordered retention of jurisdiction is fundamentally different from a private forum selection clause and should, therefore, be treated

9

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

1   differently. The Court does not find anything in the reasoning or language of *Flanagan* to suggest

2   that retention of jurisdiction would operate differently simply because the choice is between two

3   federal forums, rather than a state and federal forum.

4         The Court acknowledges that there are also other ways to distinguish this case from

5   *Flanagan* and *Alpine Land.* Whereas those cases involved complicated settlements or consent

6   decrees that the district court explicitly considered and approved, this case concerns a settlement

7   that the District of Connecticut was not required to approve and which does not appear to have

8   been filed with the court.[4] In addition, some of the practical concerns cited by *Flanagan* and

9   *Alpine Land* are not at issue here. This Court's construction of the agreement would not appear to

10  depend upon interpretation of any prior orders or judgments issued by the District of Connecticut,[5]

11  nor does it present the considerations of comity that might arise when a state court adjudicates an

12  agreement incorporated into a federal court order. Moreover, in the context of this case, where the

13  parties are few in number and no court has yet construed the agreement, the risk of inconsistent

14  judgments is more limited. It is worth noting, however, that the parties are currently involved in

15  three separate actions related to the '736 patent and at least potentially related to the settlement

16  agreement, including this one, the Omnicell Litigation in the Southern District of New York, and

17  the Pandora Litigation in the District of Connecticut, which Medacist has moved to reopen.

18        Nonetheless, *Flanagan* clearly and directly states that retention of jurisdiction should be

19  treated differently from a private forum selection clause: "a court order exercises judicial authority,

20  while a forum selection clause in a private contract does not. The context of the retention of

21  jurisdiction, a provision for future enforcement of a settlement order, implies that the retention was

22  meant to be exclusive." *Flanagan*, 143 F.3d at 545. Given this strong and clear language, the

23  Court is reluctant to find the jurisdiction retention provision to be non-exclusive without some

---

[4] As Plaintiff points out, in other contexts, courts have found no meaningful distinction between approved settlements or consent decrees and settlements not subject to approval or review by the court. *See Roberson v. Giuliani*, 346 F.3d 75, 82-83 (2d Cir. 2003) (finding that retention of jurisdiction over unreviewed settlement agreement was "not significantly different from a consent decree and entail[ed] a level of judicial sanction sufficient to support an award of attorney's fees" under a fee-shifting statute).

[5] It does not appear that the District of Connecticut issued any substantive orders in the Pandora Litigation.

10

Case No.: 10-CV-04746-LHK
ORDER GRANTING MOTION TO DISMISS

1    specific words or context indicating that retention was not intended to be exclusive. Here, the

2    Stipulation of Dismissal signed by the District of Connecticut judge explicitly stated that the Court

3    "shall retain jurisdiction . . . to enforce **its** orders, over Medacist and Pandora and the subject

4    matter of this action and the Settlement Agreement for purposes of construing and enforcing the

5    Settlement Agreement." Smith Decl. Ex. A. ¶3 (emphasis added). This language is very similar to

6    that considered in *Flanagan* and does not contain words suggesting that retention was intended to

7    be non-exclusive. Accordingly, under the reasoning and holding of *Flanagan*, the Court concludes

8    that the District of Connecticut's retention of jurisdiction was intended to be exclusive.

9          Furthermore, because this declaratory judgment action turns upon construction of the

10   settlement agreement, the Court finds that it falls entirely within the District of Connecticut's

11   exclusive retention of jurisdiction. It is true that Omnicell was not a party before the District of

12   Connecticut and is involved in this litigation as a result of an acquisition that occurred after the

13   Pandora Litigation settled. However, the settlement agreement specifically contemplates the

14   assignment of rights pursuant to an acquisition, Chang Decl. Ex. B § 9.5, and disputes regarding

15   third-party acquisitions therefore come within the District of Connecticut's retention of jurisdiction

16   over the settlement agreement. Moreover, as Omnicell claims to be entitled to the benefits of the

17   settlement and license agreement, it would seem that it is also bound by the jurisdiction retention

18   provision in the agreement and Stipulation of Dismissal. Thus, the claims brought by Omnicell

19   and Pandora in this action fall squarely within the retention of jurisdiction by the District of

20   Connecticut. Because the retention of jurisdiction is exclusive under *Flanagan*, the Court agrees

21   with Defendant these claims are not properly brought in this Court.

22         **C. Dismissal or Transfer**

23       Having found that venue in this Court is improper, the Court has two options: 1) dismiss the

24   action, or 2) transfer venue to the District of Connecticut, if it is in the interests of justice to do so.

25   *See* 28 U.S.C. § 1406(a). Medacist has expressed a preference for dismissal. Since Medacist has

26   already moved to open judgment in the District of Connecticut, it claims that it would be cleaner,

27   procedurally, to dismiss the instant action and allow Plaintiffs to assert their claims as

28   counterclaims in the existing District of Connecticut case. Plaintiffs, for their part, have argued

that the interests of justice favor keeping the case in this District, but declined to express any preference as between dismissal and transfer to the District of Connecticut.  As no party has advocated for transfer, the Court finds that dismissal is more appropriate.  Accordingly, the Court GRANTS Defendant's motion to dismiss this action on grounds of improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).

### III. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss this action pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).  Dismissal is without prejudice to Plaintiffs refiling this action in the appropriate forum.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 10, 2011

_____
LUCY H. KOH
United States District Judge